AO 91 (Rev. 11/11)  Criminal Complaint

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  **26mj2086** |
| Jonathan Lovato | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ April 09, 2026 _____ in the county of _____ Sandoval _____ in the
_____ District of _____ New Mexico _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § § 1153(a) and (b) | Offenses committed within Indian Country |
| N.M. STAT. ANN. § 30-6-1 (D) | Abuse of a child |

This criminal complaint is based on these facts:
**Please see attached Affidavit.**

☑ Continued on the attached sheet.

_____
*Complainant's signature*

**Thelma Yellow Kidney, Special Agent**
*Printed name and title*

Electronically Submitted and Telephonically Sworn.

Date: _April 28, 2026_

_____
*Judge's signature*

City and state:  Albuquerque, NM

Kirtan Khalsa United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

VS.

JONATHAN LOVATO,

(YOB 1985)

Case No.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR ARREST WARRANT

I, Thelma Yellow Kidney, of the Bureau of Indian Affairs (BIA) being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for an arrest warrant of Jonathan Lovato (YOB: 1985) for assault of his juvenile child, D.L. (YOB: 2012).

### AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

2.      I am a Special Agent with the United States (U.S.) Department of Interior (DOI), Bureau of Indian Affairs (BIA), Office of Justice Services (OJS), and have been serving in this capacity since 2018. I am currently assigned to the BIA's Southern Pueblos Agency (SPA) in Albuquerque, New Mexico. My primary investigative responsibilities as an agent include investigating violent crimes occurring within Indian Country such as unattended deaths, aggravated assaults, assaults by strangulation and suffocation, sexual assaults, and arson.

3.      I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Department of the Interior (DOI) Investigator Training Program (ITP).  I am a graduate of the

Federal Law Enforcement Training Center's (FLETC) United States Indian Police Academy (USIPA). I have taken courses about searching property as evidence to a crime and appropriate evidence collection to use later in trial. I have received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones; managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter. Additionally, unless otherwise indicated, wherever in this Affidavit I assert that an individual made a statement, that statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

### PURPOSE OF THE AFFIDAVIT

5.      As set forth herein, there is probable cause to believe that Lovato committed child abuse, in violation of 18 U.S.C. §§ 1153(a) and (b), and N.M. STAT. ANN. § 30-6-1(D).

### FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

6.      On April 09, 2026, BIA law enforcement officers responded to a call for service

at 78 Sile Road, Pena Blanca, NM 87041, an address within the exterior boundaries of the Santo Domingo Pueblo. The call for service was in connection with a child abuse involving Lovato's two sons, D.L. (YOB 2012) and S.L. (YOB 2014). BIA Law Enforcement Officer Cory Pinto responded, finding D.L., a child under the age of 18, with dried blood on his nose, face, and hands. D.L. and S.L. notified law enforcement they were afraid of their father – that is, Lovato – and provided a report of the incident. Officer Pinto notated in his report that Lovato is labeled as "Armed and Dangerous" in the Report Management System (RMS).

7.      According to D.L. and S.L., Lovato was upset for unknown reasons. D.L. and S.L. indicated that Lovato sent them to bed early, and they complied. Lovato appeared agitated and followed the children to their shared bedroom. Lovato entered the room and began yelling at them. According to D.L., Lovato pushed D.L. into his bed, held him down with his forearm, and punched D.L. in the face and head with a closed fist several times. Further, Lovato strangled D.L. by placing his hands around D.L.'s neck and applying downward pressure. D.L. stated that the strangulation caused blood to gather in his mouth and he passed out. Lovato eventually slapped across the left side of his face before eventually releasing him.

8.      Afterward, Lovato went to sleep on the living room couch. S.L. and D.L. decided to leave the house, so they put socks on to muffle the sounds of their feet as they walked across the hard floors, past the living room. They exited through an open window in a bathroom and ran down to their aunt's house (K.L. YOB: 1970), located on the same property east of the residence. The juveniles reported the incident to K.L., who immediately called law enforcement. K.L. photographed D.L., who appeared to have blood on his nose and hands. K.L. later provided the photographs to your affiant.

9.      Officer Pinto arrived at K.L.'s residence, and, for purposes of this affidavit, will

be referenced as Residence B. Residence B occupies the same property and address of the incident location. Officer Pinto spoke with the children and took photographs. Officer Pinto and BIA Acting Lieutenant (ALt.), Valentino Kie-Lucero went back up the driveway to the incident residence, which, for purposes of this affidavit, is referred to Residence A. Officers Pinto and ALt. Kie-Lucero knocked and was allowed inside by resident L.L. (YOB: 1994) who expressly requested to return to her room before Lovato was woken up. Lovato was asleep on the living room couch; Officers woke Lovato up and placed him under arrest.

10.    D.L. was taken to Presbyterian Santa Fe Medical Center, Santa Fe, NM by ambulance. Your affiant observed visible injuries on D.L., including bruising behind D.L.'s right ear, and red marks around the center, right side, and left side neck. D.L. complained of pressure in both his eyes, his eyes were red, and the white of the right eye near the nose was visibly redder when D.L. was instructed to look to their right side. Later, your affiant was notified by K.L. that D.L. received a Computed Tomography (CT) scan and was transported by ambulance to the University of New Mexico Pediatrics Hospital, Albuquerque, NM due to a brain bleed. An additional report was generated from the Presbyterian Hospital and identifies the brain bleed as a *subarachnoid hemorrhage* by a reporting nurse. The University of New Mexico Hospital conducted a Child Abuse Response Team (CART) Consultation that contained the following: *Consult Note: subarachnoid hemorrhage to the right occipital lobe, nosebleed in both nostrils and neck tenderness.*

11.    On April 16, 2026, D.L. and S.L. were forensically interviewed at Solace, Santa Fe, NM. D.L. stated that Lovato sent him and S.L. to bed early and then followed them to their shared bedroom. Lovato pushed D.L. onto his bed, used his arm to hold D.L. down, punched D.L. in the face, slapped, choked (strangled) D.L., and yelled. D.L. remembers losing

consciousness stating that he "blacked out." S.L. confirmed the events, stating that he remembered hearing "gagging" and the sound of a punch.  S.L. said his father, Lovato, was saying something but couldn't remember what was said. D.L. and S.L. waited for a length of time before putting socks on to walk along the hard floors to ensure their feet made no sounds. They climbed out their great-grandmother's bathroom window, knocking over a potted plant, and ran down to K.L.'s residence (Residence B), where they waited for law enforcement to arrive.

13.    Johnathan Lovato is a federally enrolled tribal member of the Pueblo of Santo Domingo Indian Reservation in New Mexico.

14.    The incident location (Residence A) is within the exterior boundaries of the Santo Domingo Pueblo Indian Reservation in New Mexico, therefore the incident occurred in "Indian Country" as that term is defined by federal law.

## CONCLUSION

13.    Based on the above information, there is probable cause to believe that Lovato committed a violation of 18 U.S.C. §§ 1153(a) and (b), and N.M. STAT. ANN. § 30-6-1(D), that being child abuse. Therefore, your affiant is seeking this arrest warrant to arrest and charge Lovato with the above offenses.

14.    This affidavit has been reviewed and approved by Supervisory Assistant United States Attorney Jack Burkhead

Respectfully submitted,

Thelma Yellow Kidney
Special Agent

Telephonically sworn and electronically signed on April 28, 2026

KIRTAN KHALSA
United States Magistrate Judge